IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Sophia Middleton, | ) | C/A No. 5:11-3215-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Menlo Logistics, Inc., *a/k/a Menlo Worldwide Logistics, Inc.*, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    The plaintiff, Sophia Middleton ("Middleton"), brings this action[1] against her former employer, Menlo Logistics, Inc. ("Menlo") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; as well as a state law claim for breach of contract. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 33.) Middleton filed a response to the defendant's motion (ECF No. 39), and the defendant replied (ECF No. 47). Also pending before the court are defendant's motion in limine and to strike affidavits filed by Middleton in opposition to Menlo's summary judgment motion. (ECF No. 46.) Having reviewed the parties' submissions and the applicable law, the court finds that Menlo's motion should be denied as to Middleton's retaliation claim and granted as to all other claims.

**BACKGROUND**

    The following facts are either undisputed or are taken in the light most favorable to Middleton, to the extent they find support in the record. Middleton began working for Menlo's

---

[1] The defendant removed this action from the Orangeburg County Court of Common Pleas.



predecessor in 2005 and had an unblemished employment record through 2007. In the fall of 2007, Middleton complained to the site manager, Shannon Williams, about harassment by her team leader, Anthony Alston, including unwelcome touching, stalking, and sexual propositions. Alston's supervisor was Melvin Jamison, who was a good friend of Alston. Middleton's complaint was resolved internally and the harassment ceased, but following her complaint Middleton and other employees noticed that she was being treated in a negative and disparate manner by Jamison. In June of 2008, Middleton again complained to Williams, who was Jamison's supervisor, about what she perceived to be retaliatory conduct. Williams told Middleton "not to worry about it." (Middleton Aff. ¶ 18, ECF No. 39-1 at 6.)

The record shows that on the warehouse floor, where Middleton was for a time the only female on her shift, many of Menlo's employees and supervisors used crude and sexually oriented, offensive language and profanity. Middleton was not bothered by this and joined in. In July of 2008, Middleton entered the warehouse office where a number of male employees were gathered. A new temporary female employee was present for her first day of work. Middleton made a comment that the men were "here [in the office] because of new pussy." (Middleton Aff. ¶ 19, ECF No. 39-1 at 6.) Approximately two weeks later, Middleton was fired by Williams, who informed her that he had made the decision to fire her for "sexual harassment" due to Middleton's crude comment about the new female employee. According to Middleton, Williams and Jamison, who was also present, smirked when they told her she was being discharged for sexual harassment.

DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there



will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).   The defendant's burden "is a burden of production, not persuasion."  Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*."  Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' "  Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' "  Merritt,

Page 4 of 15



601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

C.    Middleton's Claims

   1.    Title VII Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). In a typical retaliation case, a plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer acted adversely against



her; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washinton Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).[2] "Protected activity" under the statute falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 274 (2009); Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003) (stating that to establish that a plaintiff engaged in protected opposition activity, she must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring). To constitute protected activity, a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated federal law. See Cordero v. Florida, No. 4:06cv529-SPM/AK, 2007 WL 2972988, at *6 (N.D. Fla. Oct. 9, 2007) (ADA) ("[A]lthough Plaintiff complained generally that [his supervisor] treated him poorly, he never complained about disability harassment. The [employer] cannot be held liable for failing to take prompt remedial action since Plaintiff did not put the [employer] on notice that he was being harassed because of his disability."); cf. Okoli v. City of Baltimore, 648 F.3d 216, 224 & n.8 (4th Cir. 2011) (Title VII retaliation) (finding that making a complaint of "harassment" and providing a description of the behavior at issue constituted protected activity under Title VII of which the employer should have known even though the complaint did not use "magic words" identifying the specific trait (gender) protected under Title

---

[2] Alternatively, to establish a claim of an unlawful disparate discipline in a discrimination case, a plaintiff is generally required to show that (1) he or she engaged in prohibited conduct similar to that of a person outside his or her federally protected class; (2) disciplinary measures enforced against him or her were more severe than those enforced against the other person. See Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008) (discussing *prima facie* case for disparate discipline based on a Title VII protected class). Thus, pertinent here, Middleton may show that she was disciplined more severely than persons who had not complained about unlawful activity proscribed by Title VII.



VII); see also Jordan v. Alternative Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006) (stating that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing Equal Employment Opportunity Comm'n v. Navy Federal Credit Union, 424 F.3d 397 (4th Cir. 2005)).

To establish that she suffered an adverse action with respect to a retaliation claim, a plaintiff must show that the adverse action was objectively material. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Jafari v. Old Dominion Transit Management Co., C/A No. 3:08-CV-629-JRS-DJN, 2012 WL 6651987, at *7 (E.D. Va. Dec. 20, 2012) (stating that termination clearly satisfies the adverse action requirement in a retaliation context).

To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action " '*because* the plaintiff engaged in a protected activity.' " Holland, 487 F.3d at 218 (emphasis in original) (quoting Dowe v. Total Action Against Poverty in Roanoake Valley, 145 F.3d 653, 657 (4th Cir. 1998)). Thus, to demonstrate causation, a plaintiff must show that the employer was aware of the protected activity. See Shield v. Fed. Express Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)). In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient).

Here, Middleton has demonstrated a *prima facie* case of retaliation, in that she has shown that she complained to Williams of retaliatory behavior by Jamison in June 2008 and was discharged by

Page 7 of 15



Williams only a few weeks later. Menlo argues that Middleton's complaint to Williams in June 2008 was not protected activity because she did not indicate that it was retaliatory. The court disagrees. Middleton's testimony shows that she told Williams that Jamison was being "nitpicky" regarding her work following her sexual harassment claim against Alston. (Middleton Dep. 135:24-36:14, ECF No. 48-2 at 34-35.) Menlo objects that Middleton's affidavit, wherein she specifically avers that she told Williams that Jamison's behavior began after she filed the complaint against Alston, contradicts her sworn deposition testimony and thus cannot create a genuine issue of material fact. See generally Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). However, juxtaposition of the portions of Middleton's deposition upon which Menlo relies and her affidavit testimony shows that they are not contradictory; rather, her affidavit supplements her prior testimony during which she was questioned by Menlo's lawyers. For example, although Menlo contends that Middleton agreed in her deposition with Williams's statement that Middleton never made a complaint of retaliation, the cited portions of her deposition do not support that statement. Rather, it is unclear whether some portions of the deposition questioning focus on her complaints of sexual harassment by Alston as opposed to her complaints of retaliation by Jamison. Moreover, in her deposition, Middleton specifically states that shortly before her termination she complained to Williams about Jamison. (Middleton Dep. 135:24-36:14, ECF No. 48-2 at 34-35.) She was not specifically asked during that colloquy if she told Williams that she believed Jamison's behavior resulted from her prior complaint against Alston. But even so, the questions and answers suggest a retaliatory connection between her sexual harassment complaint and her subsequent June 2008 complaint to Williams regarding



Jamison's conduct.  (See id. ("Q:  What other concerns *after September 27th of 2007* did you bring to Shannon Williams that he did not address?  A:  Right before – sometime before I was terminated, I spoke with Shannon about [Jamison] being nitpicky . . . .")).  Her affidavit clarifies that she further told Williams in June of 2008 that she felt that Jamison's behavior "was because of the complaint I had filed about Mr. Alston." (Middleton Aff. ¶ 18, ECF No. 39-1 at 6); see Okoli, 648 F.3d at 224 & n.8 (finding that making a complaint of "harassment" and providing a description of the behavior at issue constituted protected activity under Title VII of which the employer should have known even though the complaint did not use "magic words" identifying the specific trait (gender) protected under Title VII).  Nothing that Menlo cites in Middleton's deposition contradicts that statement.[3] (See, e.g., Def.'s Mot. Strike Affs. at 4, ECF No. 46 at 4 (citing Middleton Dep. 139:25-140:7) (discussing disciplinary measures taken by Menlo against Alston for sexually harassing Middleton); see also Def.'s Reply Mem. Summ. J. at 5, ECF No. 47 at 5 (citing Middleton Dep. 136:16-25, 137:13-19, 141:17-20, 144:14-145:1, 146:7-24, 175:20-176:2) (discussing, among other things, why Middleton did not complain on the *corporate hotline* or file a *written* complaint of retaliation)).  Accordingly, the court rejects Menlo's argument that Middleton cannot establish a causal connection between protected activity and her termination because her affidavit contradicts her deposition testimony.

Further, Menlo's argument that Middleton cannot establish a causal connection between her complaint of *sexual harassment* and her termination ten months later misses the mark:  the appropriate inquiry with regard to her retaliation claim is whether a causal connection exists between

---

[3] Menlo's point that Middleton never before in the litigation characterized her June 2008 complaint to Williams as one raising unlawful retaliation goes to the believability of her testimony, a question for a jury.



her complaint of *retaliation* made in June of 2008 and her *termination* only a few weeks later. See, e.g., Warren v. Halstead Industries, Inc., 802 F.2d 746, 757, 758 (4th Cir. 1986) (noting that close temporal proximity—in that case less than a month—combined with other relevant evidence can give rise to an inference of causal connection and pretext).

As Menlo has proffered a legitimate, non-retaliatory reason for Middleton's discharge—the vulgar comment to the new employee—Middleton must establish that this reason was pretextual. At this point, her burden merges with her obligation to show that she has been the victim of intentional retaliation. See Merritt, 601 F.3d at 294. As stated above, she may meet this burden by proving that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

The Fourth Circuit has recognized that selective application of a facially neutral policy can be probative of pretext. See Merritt, 601 F.3d at 297-99. Here, Menlo asserts that Middleton's crass language in reference to the new employee violated its "No Harassment in Employment" policy.[4] (ECF No. 33-2 at 7.)   Significantly, Middleton has shown that Alston was less severely disciplined for violation of this same policy. See Laing v. Fed. Express Corp., ___ F.3d ___, 2013 WL 93141, *5-7 (4th Cir. 2013) (generally discussing the compelling nature of comparator evidence at the pretext stage of the burden shifting framework); Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (stating to be similarly situated to permit a valid comparison, a proffered comparator must have dealt with the same decision maker, been subject to the same standards, and have engaged in the same conduct without mitigating circumstances that would distinguish his conduct or the

---

[4] Notably, Menlo's expressed reason for discharging Middleton was that she engaged in "sexual harassment."



employer's treatment of him for it).  Menlo argues that Alston, who received a Final Written Warning but was not terminated for his alleged sexual harassment of Middleton, is not a valid comparator to Middleton because his conduct was not as egregious: he only commented, it contends, that Middleton had pretty eyes, whereas Middleton called a new female employee a vulgar name. This argument utterly ignores Middleton's evidence, which a jury could believe, that Alston—Middleton's team leader—also inappropriately touched her by rubbing her arms and stroking her body, made sexually suggestive comments to her personally, stalked her, and grabbed her arm "hard" and pulled her around when she was at the water fountain.  Nor can Menlo avail itself of the argument for summary judgment purposes that Menlo legitimately perceived Alston's conduct to be less serious than Middleton's.[5]  Menlo's purported belief that Alston only told Middleton that she had pretty eyes is disingenuous.  A reasonable jury applying its common sense could consider that employees generally do not receive a Final Written Warning for merely giving a compliment to a co-worker and infer that Williams actually believed Alston's conduct to have gone further than the "pretty eyes" comment.  Moreover, Menlo's position that Middleton and Alston are not similarly situated because Alston denied Middleton's accusations and Menlo could not substantiate them

---

[5] Although the relevant inquiry is Menlo's honestly held perception, it is interesting to note that Fourth Circuit case law suggests that Alston's alleged conduct is actually considered to be *more serious* than Middleton's in terms of whether objectionable conduct actually rises to the legal standard for unlawful harassment.  Compare Hartsell v. Duplex Prod., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (suggesting that inappropriate touching and sexual proposition could be enough to establish harassment) with Jordan v. Alternative Resources Corp., 467 F.3d 378, 379-80 (4th Cir. 2006) (generally discussing "Title VII jurisprudence that recognizes a difference between an isolated racial slur, which is always and everywhere inappropriate, and the sort of severe or pervasive conduct that creates a hostile work environment").



could be reasonably discounted in light of Middleton's evidence that Menlo failed to interview any witnesses to the alleged harassment by Alston after Alston denied it.[6]

"In assessing pretext, a court's focus must be . . . whether the employer believed its stated reason to be credible." Amizi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006), cited in Holland, 487 F.3d at 217; cf. Holland, 487 F.3d at 213 (affirming district court's finding that Holland had presented no evidence to show that the decision maker's proffered reason for firing Holland was "disingenuous" and finding no evidence that the decision maker did not "honestly believe" threats were made). Such disparate treatment of two employees, both of whom reported to Williams, for violation of the same anti-harassment policy is probative of pretext. A jury could reasonably find that Menlo did not believe its stated reason for treating Middleton differently than Alston and that such reason was offered as a pretext for unlawful retaliation. Moreover, it is undisputed that immediately following his inquiry into Middleton's misconduct Williams told Middleton that nothing more would be done regarding the matter, and not until several weeks later did he inform her that she was being discharged for it. This also tends to show that Williams's purported belief that Middleton deserved to be discharged for her crude, offensive comment is unworthy of credence. See Holland, 487 F.3d at 217 (addressing the issue of pretext and granting summary judgment where the plaintiff had no evidence that the decision maker did not honestly believe that the plaintiff "deserved to be discharged" for threatening a co-worker); cf. Duggan v. Sisters of Charity Providence Hosp., 663 F. Supp. 2d 456, 470 (D.S.C. 2009) (finding that the plaintiff could not

---

[6] As discussed below, a sexual harassment claim based on Alston's alleged conduct is not properly before the court. It is, however, probative of pretext that Alston, who had not engaged in protected activity, was not terminated under the "No Harassment in Employment" policy whereas Middleton, who had complained, was.



demonstrate pretext where the undisputed evidence showed that the relevant decision maker fired everyone she knew about who used profanity).

Thus, a reasonable jury could find, contrary to Menlo's contention, that Williams was aware of at least one other serious infraction of the "No Harassment in Employment" policy and treated Middleton differently—discharging rather than warning—and that his stated reason for firing Middleton was pretextual. Cf. id. (granting summary judgment to employer because the plaintiff had no evidence that the decision maker in his case was aware that other employees had engaged in comparable conduct). Thus, considering together the strength of Middleton's *prima facie* case, the probative value of her proof that Williams's explanation for her discharge is false, and other evidence tending to show that she was discharged in retaliation for her complaints about Jamison's retaliatory behavior, the court finds that a reasonable jury could find that Middleton was the victim of unlawful retaliation. See Reeves, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non[retaliatory] reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no [retaliation] had occurred."); Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional [retaliation].").

### 2. Other Claims

In her opposition memorandum Middleton appears to have abandoned any claim of disparate treatment based on her gender arising out of her termination. (Pl.'s Mem. Opp'n Mot. Summ. J. at 2, ECF No. 39 at 2) ("This case is a retaliation and sexual harassment case with common law causes



also pled."). Moreover, any claim of sexual harassment, which she does purport to raise, is barred. (See Def.'s Reply Mem. Mot. Summ. J. at 11-12, ECF No. 47 at 11-12); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002) ("In order for a claim to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). Finally, Middleton concedes that her state law claim is time barred. (Pl.'s Mem. Opp'n Mot. Summ. J. at 25, ECF No. 39 at 25.)

## RECOMMENDATION

For the foregoing reasons, the court recommends that Menlo's motion be denied as to Middleton's retaliation claim and granted as to all other claims. (ECF No. 33.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 24, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).